UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MIKAEL GIANFRANCO ROB,

                  Plaintiff,

     v.

LOLA HILTON VON HORN,

                  Defendant.
-------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

19-CV-3822
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

     Plaintiff Mikael Gianfranco Rob filed this breach of contract action (the "*Rob* Action")

against Defendant Lola Hilton Von Horn in the Supreme Court of the State of New York, County

of Queens, on December 3, 2018, and it was removed to the United States District Court for the

Southern District of New York on January 28, 2019.  *See generally* Dkt. Nos. 1, 4.[1]  On July 1,

2019, the *Rob* Action was transferred to this Court pursuant to 28 U.S.C. §§ 1406(a) and 1441(a).

*See* Dkt. No. 12.  Separately, Von Horn brought an action against Mary Connors—related to the

allegations in the *Rob* Action—in this Court on August 10, 2022.  *See generally Von Horn v.*

*Connors*, No. 22-CV-4721 (AMD) (JAM) (the "*Von Horn* Action"), Dkt. No. 1.[2]

     Currently pending before this Court, on a referral from the Honorable Ann M. Donnelly,

United States District Judge, is Rob's motion for default judgment pursuant to Fed. R. Civ. P.

55(b)(2).  *See generally* Dkt. Nos. 96, 98; *see also* Referral Order dated May 19, 2025.  In the *Rob*

---

[1] Citations are to the *Rob* Action unless otherwise stated.

[2] On September 20, 2025, the undersigned issued a Report and Recommendation that the *Von Horn* Action be dismissed due to Von Horn's failure to prosecute.  *See Von Horn* Action, Dkt. No. 70.  Von Horn has not made any filings in the *Von Horn* action to date.

Action, Rob seeks entry of default judgment in the amount of €500,000,[3] plus pre-and post-judgment interest against Von Horn, based on her alleged breach of contract or, alternatively, her unjust enrichment.  *See* Dkt. Nos. 96-1, 96-7, 98-1.  Rob also seeks dismissal of Von Horn's counterclaims.  Dkt. No. 96-1 at 14-18[4]; *see also* Dkt. No. 26.

For the reasons set forth below, the undersigned respectfully recommends that Rob's motion be granted in part and denied in part.[5]

## I.    <u>Background</u>

### A.    The *Rob* Action

From 1990 to 1999, Rob alleges that he made a number of loans to Von Horn in the sum of 5 million Swedish Krones and €500,000, which Rob alleges "is the equivalent of One Million Three Hundred Thousand Dollars ($1,300,000).[6]  Dkt. No. 22 ¶ 6.  Von Horn allegedly used those loans to purchase several investment properties in the French Riviera and in the United States.  *Id*. ¶ 7.  Rob alleges that Von Horn agreed to "be repaid [o]n demand or upon the sale of those properties purchased with the funds loaned to her."  *Id*.

---

[3] Rob's damages request is in a foreign currency, but "American courts rarely enter judgments in a foreign currency."  *Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 12 (2d Cir. 2014).  The issue of currency conversion will be discussed in the Damages section below.

[4] Page citations are to the ECF-stamped pages, unless otherwise stated.

[5] Ryan Pinch, a judicial intern who is a third-year law student at the U.C. Berkeley School of Law, is gratefully acknowledged for his assistance in the research of this Report and Recommendation.

[6] The Court notes that based on December 31, 1999 exchange rates, SEK 5,000,000 was approximately $587,500, while €500,000 was approximately $502,000, making the converted total based closer to $1,100,000.  *See, e.g.,* Investing.com, *USD/SEK Historical Data*, Investing.com, https://www.investing.com/currencies/usd-sek-historical-data (last visited Oct. 12, 2025); European Central Bank, *Euro reference exchange rate: US dollar (USD)*, Euro-reference Exchange Rates, https://www.ecb.europa.eu/stats/policy_and_exchange_rates/euro_reference_exchange_rates/html/eurofxref-graph-usd.en.html (last visited Oct. 12, 2025).

On November 16, 2011, Rob claims that Von Horn executed, under oath, a $650,000 promissory note in Rob's favor, which allegedly accounted for "half of the money he [had] lent to her." *Id*. ¶ 8. Together with the promissory note, Von Horn allegedly granted Rob security interests in two properties in Nice, France, that she purchased with the funds Rob had loaned to her. *Id*. ¶ 9.

On January 5, 2012, Von Horn allegedly executed a letter of debt agreement ("Letter of Debt"), memorializing another $650,000 in indebtedness to Rob, representing "the other half of the money he lent to her." *Id*. ¶ 10. The Letter of Debt further granted Rob a security interest in Von Horn's present and prospective real estate holdings, including apartments in Nice, France and Fort Lauderdale, Florida. *Id*. ¶ 11. Rob alleges that future purchases of real estate by Von Horn were to be deemed "additional collateral" pursuant to this agreement, and subject to Rob's security interest. *Id*. ¶ 12.

On January 12, 2015, Rob alleges that Von Horn—with Rob's knowledge and consent—purchased property in Astoria, Queens, which served as additional collateral for the repayment of the balance of the loan in the sum of $650,000 made by Rob to Von Horn. *Id*. ¶ 13-14.

On May 1, 2015, Rob alleges that Von Horn sold one of her properties in Florida and paid Rob $650,000 in satisfaction of the November 16, 2011 promissory note. *Id.* ¶¶ 15-16. Rob further alleges that he and Von Horn came to an agreement whereby he would pay her real estate taxes on one of her Florida properties and that the property would be sold in 2017 to satisfy principal due to Rob under the Letter of Debt. *See* Dkt. No. 22 ¶¶ 18-20; *see also Von Horn* Action, Dkt. Nos. 68-4, 68-5.

On September 1, 2018, Rob alleges that he demanded repayment of the loan balance pursuant to the Letter of Debt. *Id*. ¶ 21; *Von Horn* Action, Dkt. No. 68-3.

On March 29, 2019, Von Horn sold one of her Florida properties that was allegedly subject to Rob's security interest, but did not pay Rob proceeds therefrom or otherwise satisfy the Letter of Debt.  Dkt. No. 22 ¶ 22.

Rob commenced the *Rob* Action in the Supreme Court of the State of New York, County of Queens, on December 3, 2018.  *See* Dkt. No. 4-1 at 3.  On January 28, 2019, Von Horn removed the *Rob* Action to the United States District Court for the Southern District of New York.  *See* Dkt. Nos. 1, 4.  On July 1, 2019, the Rob Action was transferred to the United States District Court for the Eastern District of New York.  Dkt. No. 12; July 1, 2019 Text Order.

Rob was granted leave to file an amended complaint and did so on September 14, 2020. *See* Dkt. No. 22.  In the amended complaint, Rob seeks damages in the sum of €500,000, which Rob asserts is the equivalent of $650,000, plus interest.  *See id.* ¶¶ 6, 26, 32.  The parties unsuccessfully attempted mediation in September 2021.  *See* September 21, 2021 Text Order.

On June 1, 2022, Judge Donnelly held a pre-motion conference on Rob's and Von Horn's respective letters requesting leave to move for summary judgment.  *See* June 1, 2022 Text Order; Dkt. Nos. 43, 45, 47.

On June 15, 2022, Rob and Von Horn filed a joint status report indicating, *inter alia*, that they both intended to withdraw their respective requests to move for summary judgment.  *See* Dkt. No. 49.

On December 9, 2022, Judge Donnelly consolidated the *Rob* Action and *Von Horn* Action, stating that, "[t]hese two cases present numerous common questions of law and fact, including Rob's alleged loans to Von Horn and the disposition of Von Horn's real property" and that requiring separate trials for the two cases "would force the same witnesses to testify twice about these topics."  December 9, 2022 Text Order.

4

### B.    The *Von Horn* Action

On August 10, 2022, Von Horn filed suit against Mary Connors, alleging that Connors conspired with Rob to defraud Von Horn, and bringing causes of action for fraud, aiding and abetting a breach of fiduciary duties, conversion, and civil conspiracy against her.  *See generally Von Horn* Action Dkt. Nos. 1, 26-2.  Specifically, Von Horn's lawsuit alleges that she and Rob became romantic partners in the 1990s.  *Von Horn* Action, Dkt. No. 26-2 ¶¶ 16-17.  Von Horn also alleges that she served as Rob's "sponsor" and allowed him to live at her various properties while he obtained an economics degree.  *Id*. ¶ 18.  Von Horn asserts that Rob learned of her alleged "disabilities—severe dyslexia and alcoholism—which left her vulnerable[,]" and took advantage of her.  *Id*. ¶ 19.  Von Horn further claims that "Rob had inserted himself into Von Horn's affairs to such an extent that Rob had fully displaced Von Horn's past husbands' and family members' day to day trusteeships and Rob became the primary trusted friend upon which Von Horn relied." *Id*. ¶ 24.

Von Horn claims that "Rob was successful over the years convincing [her] to send to him her signatures on blank pieces of paper which he could use in creating letters of authority to manage Von Horn's spa business and real estate issues."  *Id*. ¶ 28.  Additionally, Von Horn alleges that Rob was entrusted with rental management of her "Pilot House" property in Florida ("Pilot House") and the payment of proceeds to Von Horn.  *Id*. ¶ 39.  Von Hon asserts that "Rob and Connors convinced [her] that Rob should have a Power of Attorney" over Von Horn.  *Id*. ¶ 45. Von Horn also alleges that Rob and Connors induced her to grant them access to her Chase bank account, and that proceeds from the May 2015 sale of one of her properties in Florida were deposited in such Chase account.  *Id*. ¶¶ 52, 60.  Once the funds were deposited, Von Horn alleges that "Rob converted and transferred from the Von Horn joint account using his online transfer

credentials the sum of $650,000 to his individual Money Market Account at Chase Bank." *Id*. ¶ 61. Additionally, Von Horn alleges that Rob and Connors, "siphoned off rental income from Von Horn's Astoria apartment" via the same Chase account. *Id*. ¶ 63.

Additionally, Von Horn claims that she did not discover this alleged fraud until Rob commenced the present lawsuit in New York State Court. *Id*. ¶ 64, 81. Von Horn further asserts that, "Rob had previously duped Von Horn into signing other documents over the years since 2010 as part of the long-planned scheme to defraud [her]." *Id*. ¶ 66.

Von Horn contends that Rob and Connors continued their scheme after they were confronted about the alleged conversion of funds, by promising to purchase an apartment in Stockholm, Sweden for Von Horn. *Id*. ¶¶ 68-70. Von Horn alleges that she engaged counsel in Sweden and brought an action to quiet title to this apartment in Stockholm, but that such efforts were unsuccessful. *Id*. ¶¶ 94-96.

### C.   Pertinent Consolidated Procedural History

As noted above, the Court consolidated the *Rob* Action and the *Von Horn* Action on December 9, 2022. December 9, 2022 Text Order. The parties participated in an unsuccessful mediation on June 6, 2023. June 6, 2023 Text Order. On August 21, 2024, Connors filed a letter seeking leave to move to dismiss Von Horn's complaint, *Von Horn* Action Dkt. No. 20, which Von Horn opposed on September 20, 2023, *Von Horn* Action Dkt. No. 22. On March 28, 2024, Judge Donnelly granted in part and denied in part Connors's motion to dismiss, and directed Von Horn's proposed amended complaint be deemed the operant complaint. *See Von Horn* Action Dkt. Nos. 40; 26-2.

Discovery closed on April 19, 2024. *See* April 19, 2024 Text Order. Rob informed the Court of his intention to move for summary judgment on April 24, 2024. *See* Dkt. No. 72. The

Court directed both parties to submit Rule 56.1 Statements of Undisputed Fact and extended those deadlines multiple times before setting a final deadline of October 31, 2024. *See* Dkt. Nos. 72, 74, 75.

On October 29, 2024, Von Horn's counsel, Paul Verner, filed an emergency request to be relieved as her attorney, citing "deterioration of [the] working relationship with [his] client." Dkt. No. 76 at 1. The Court deferred ruling on the motion to withdraw until Verner could further communicate with Von Horn. October 30, 2024 Text Order.

The Court held a telephonic conference regarding the withdrawal motion on December 13, 2024. The Court ordered Von Horn to personally appear at the telephonic conference. Von Horn, however, failed to appear. The Court ordered Von Horn to show cause by December 20, 2024, and provide an explanation for her failure to appear in violation of the Court's Order. December 13, 2024 Text Order. The Court also warned Von Horn that her failure to respond or comply with its orders could result in sanctions, such as dismissal of the *Von Horn* Action and entry of a judgment of default in the *Rob* Action. *Id*. The Court directed Verner to serve the Court's December 13, 2024 Order on Von Horn and file proof of the same on the docket. *See* December 22, 2024 Text Order. Verner served Von Horn and her nieces, Andrea Gunnarson and Sara Norman, at their last-known email addresses on December 24, 2024. Dkt. No. 87; *see* December 22, 2024 Text Order.

On December 26, 2024, the Court granted Verner's motion to withdraw and extended the deadline for Von Horn to show cause until January 8, 2025. December 26, 2024 Text Order. The Court reiterated its admonition that Von Horn's failure to respond to Court orders could result in dismissal of the *Von Horn* action or entry of a judgment of default in the *Rob* Action. *Id*. This

Order was also served on Von Horn and her two nieces by Verner at their last-known email addresses. *See* Dkt. No. 89.

After Von Horn again failed to show cause in response to the Court's Order, the Court *sua sponte* extended the deadline her to do so until January 31, 2025. *See* January 9, 2025 Text Order. The Court again warned Von Horn that failure to respond could result in dismissal of her action or a default judgment. *Id*. The Court directed the Clerk of Court to serve the Order on Von Horn and her two nieces at their last-known email addresses. *Id*.

Von Horn did not show cause or otherwise respond to the Court's orders. *See* February 11, 2025 Text Order. Accordingly, on February 11, 2025, the Court directed Connors to file a motion to dismiss for Von Horn's failure to prosecute the *Von Horn* Action, and Rob was directed to seek a Certificate of Default from the Clerk of Court for Von Horn in the *Rob* Action. *See id*. Again, the Court directed the Clerk of Court to serve the Order on Von Horn and her nieces via email. *Id*.

On March 18, 2025, Von Horn replied to the undersigned's chambers in one such email, attempting to explain her absence from the Court's December 13, 2024 status conference and her failure to respond to the Court's orders. Contrary to the Court's orders, however, Von Horn, did not file anything on the docket. There were no further communications or submissions from Von Horn to the Court.

On April 2, 2025, Connors filed a motion to dismiss for lack of prosecution. *Von Horn* Action Dkt. No. 64. On May 16, 2025, Rob filed the instant motion for default judgment against Von Horn. Dkt. No. 96. Both motions were referred to the undersigned by Judge Donnelly. *See* April 14, 2025 Text Order; May 19, 2025 Text Order.

## II.    <u>Legal Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 114 (E.D.N.Y. 2025) (explaining, "the Clerk of Court enters a party's default after an affidavit or other evidence shows that the 'party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'" (citing Fed. R. Civ. P. 55(a))).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *NYQF Inc.*, 781 F. Supp. 3d at 114 (quoting *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) (citing Fed. R. Civ. P. 55(b)(1)).  At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so

9

that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III. Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP),

2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

## A.    Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332, district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Jurisdiction pursuant to 28 U.S.C. § 1332(a) requires complete diversity between all plaintiffs and defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, (1996). The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).

Here, Rob is a resident of New York. Dkt. No. 22 ¶ 1. Von Horn is a citizen of Sweden. *Id*. at ¶ 2. Further, the *Rob* Action seeks damages in the amount of $1,300,000 plus legal fees and costs, which exceeds the minimum threshold of 28 U.S.C. § 1332(a)(1). Dkt. No. 22 at 6.

Accordingly, the undersigned respectfully recommends a finding that the Court has subject matter jurisdiction over Rob's claims.

## B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023) (finding "[a] court may not enter default judgment unless it has jurisdiction over the person of the party against

whom the judgment is sought, which also means that he must have been effectively served with process." (internal quotations and citation omitted)), *report and recommendation adopted* Text Order dated Jan. 9, 2024, *judgment entered* 2024 WL 4648142 (E.D.N.Y. Sept. 30, 2024). "The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles." *Perez v. Exquisito Rest. Inc.*, No. 23-CV-8707 (OEM) (MMH), 2025 WL 630138, at *3 (E.D.N.Y. Feb. 27, 2025) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012) (subsequent history omitted)).

Here, the Court has personal jurisdiction over Von Horn. First, Rob properly served the Summons and Complaint on Von Horn. Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made. Fed. R. Civ. P. 4(e)(1). New York state law permits service to be made by "delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons . . . to the person to be served at his or her actual place of business" or to the person's last known residence. N.Y. C.P.L.R. § 308(2). Here, Rob properly served Von Horn by delivering copies of the summons and Complaint to her domicile and by mailing a copy of the same. *See* Dkt. No. 4-3; *see also* Fed. R. Civ. P. 4(e)(2)(A).

Accordingly, the undersigned respectfully recommends that the Court find it has personal jurisdiction over Von Horn.

### C.    Venue

The amended complaint alleges that the acts or omissions that give rise to the lawsuit occurred in this District.  *See* Dkt. No. 22; Dkt. No. 4-1.  Because "a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" under 28 U.S.C. § 1391(b)(2), the amended complaint establishes that venue is proper.  *See* Dkt. No. 22 at ¶ 5.  Accordingly, the undersigned respectfully recommends a finding that venue is proper in this District.

### IV.    **Procedural Compliance for Default Judgment**

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotations and citation omitted).

### A.    Entry of Default

The undersigned respectfully recommends a finding that Rob properly obtained the certificate of default against Von Horn.  Von Horn had been participating in litigation for six years until she abruptly stopped responding to Court orders in late 2024.  Prior to the Clerk's entry of default, Von Horn was personally served via email and first-class mail at her alleged last-known

13

address. Dkt. No. 91-2. Rob provided a declaration of service, a declaration in support of default, and a proposed certificate of default on February 24, 2025. Dkt. No. 91-2. After ordering Von Horn to show cause as to why she should not be sanctioned for failure to appear at a scheduled conference on December 13, 2024, the Court provided numerous extensions, but Von Horn failed to respond to the Court's orders. February 11, 2025 Dkt. Order. Rob requested a certificate of default pursuant to Local Civil Rule 55.1. Dkt. No. 91; L. Civ. R. 55.1. The Clerk of Court entered default against Von Horn on February 25, 2025. Dkt. No. 92.

Moreover, Von Horn's failure to respond to the Court's orders here was willful. Notwithstanding the Court's efforts, Von Horn abruptly stopped responding, failed to appear, and has not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) ("the 'typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer.' *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986)). Nonetheless, a district court is also empowered to enter a default against a defendant [that] has failed to . . . otherwise defend.'' *Id.* (quoting Fed. R. Civ. P. 55(a)). Indeed, the undersigned has respectfully recommended that the *Von Horn* Action be dismissed due to Von Horn's failure to prosecute. *See Von Horn* Action, Dkt. No. 70.

Accordingly, the undersigned respectfully recommends a finding that the Clerk's Certificate of Default was properly entered against Von Horn.

### B.    Local Civil Rule 7.1 and Local Civil Rule 55.2

Local Civil Rule 7.1(a) requires that a plaintiff attach to a motion for default (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought; (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the

motion; and (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  *See* Loc. Civ. R. 7.1(a).

> Under Local Civil Rule 55.2,
>
> any party seeking a default judgment must file: (1) an affidavit or declaration showing that: (A) the clerk has entered default . . .; (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act . . .; (C) The party against whom judgment is sought is not known to be a minor or an incompetent person . . .; (2) . . . the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order . . .; and (3) a certificate of service stating that all documents in support of the request for default judgment . . . have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought.

Loc. Civ. R. 55.2(a).  In addition to the requirements of Local Rule 55.2(a), a party seeking default judgment from the court must file a statement of damages that shows the proposed damages and their bases.  Loc. Civ. R. 55.2(c).

Rob complied with the procedural requirements set forth in Local Civil Rule 7.1(a) by filing a notice of motion (Dkt. No. 96), a memorandum of law (Dkt. No. 96-1), and affidavits and exhibits (Dkt. Nos. 96-2 – 96-8) in support of the motion.  Rob also included a word count certification statement, as required by Local Civil Rule 7.1(c).  Dkt. No. 98-1 at 14.  The undersigned respectfully recommends that Rob is found to have complied with the requirements of Local Civil Rule 7.1.

Rob initially failed to comply with the requirements of Local Rule 55.2(a), and the Court ordered Rob to submit a supplemental declaration.  *See* Text Order dated Sept. 9, 2025.  Rob's revised submission affirms that the Clerk of Court has entered a certificate of default; that Rob has complied with the SCRA (discussed further *infra*); and that Von Horn is not a minor or incompetent person.  Dkt. No. 92; Dkt. No. 98-2 ¶¶ 14-16; *see* Loc. Civ. R. 55.2(a).  Rob also included a certificate of service showing that Von Horn was served at her last known address, in

15

compliance with Local Civil Rule 55.2(a)(3).  Dkt. No. 96-8.  Additionally, Rob included a proposed judgment per Local Rule 55(a)(2).  Dkt. No. 96-7.  Rob further filed a declaration showing the proposed damages and the bases for calculating those amounts and supplemented that declaration at the Court's request.  *See* Dkt. Nos. 96-2, 98-2; Text Order dated Sept. 20, 2025.

Accordingly, the undersigned respectfully recommends that Rob be found to have met the jurisdictional requirements to proceed with his motion under Local Civil Rule 55.2.

### C.    Compliance with the SCRA

The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

Rob's supplemental declaration includes a printout from the Department of Defense Manpower Data Center—an entity that hosts the SCRA verification website—showing no results for Von Horn.  Dkt. No. 98-7; *see Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 333 (E.D.N.Y. 2024) (holding, "[a]dequate proof might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service."); *ADI Glob. Distribution v. Green*, No. 20-CV-3869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and*

*recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023) (affirming that plaintiff seeking default judgment must "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit . . . Certification . . . of a defendant's military status can be obtained from the Department of Defense's Servicemembers Civil Relief Act website[.]" (internal quotation marks and citation omitted)).  Rob acknowledges in his declaration that the search was only run by name and not by Social Security number, as Von Horn is undisputedly a citizen of Sweden who does not possess a Social Security number.  Dkt. No. 98-2 ¶¶ 4-6; Dkt. No. 22 ¶ 2; Dkt. No. 23 ¶ 2; *see* Dkt. No. 96-3 (showing Von Horn's Swedish passport).

Accordingly, the undersigned respectfully recommends that Rob be found to have satisfied the SCRA requirements to proceed with his motion.

## V.    Liability for Default Judgment

### A.    Breach of Contract

To state a breach of contract claim under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.  *Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.,* No. 06-CV-4881 (FB) (CLP), 2007 WL 2287902, at *1 (E.D.N.Y. Aug. 8, 2007) (citing *Terwilliger v. Terwilliger,* 206 F.3d 240, 245-46 (2d Cir. 2000)); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015); *accord AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022).

In a default judgment case, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  *Greyhound Exhibitgroup*, 973 F.2d at 158; *Mickalis Pawn Shop*, 645 F.3d at 137 ("It is an ancient common law axiom that a defendant who defaults thereby

admits all well-pleaded factual allegations contained in the complaint") (internal quotations marks omitted). Furthermore, the Court is "required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

Here, Rob adequately alleges each element of liability. First, Rob has demonstrated the existence of a contract between himself and Von Horn, exhibited by the signed Letter of Debt, and the Letter of Acknowledgment. Dkt. Nos. 96-3, 96-4. Those signed agreements memorialize the loan agreements at issue, which Rob further describes in the amended complaint. *See* Dkt. No. 22 ¶ 6. Second, Rob has successfully pleaded his own performance of the contract as he claims he provided loans to Von Horn totaling approximately $1,300,000 between 1990 and 1999. *Id*. Third, Rob sufficiently alleges that Von Horn sold one of her residential properties, entitled Pilot House, without settling the debt she owed to Rob, as they had allegedly agreed. Dkt. No. 22 ¶ 22. Finally, Rob alleges damages resulting from Von Horn's failure to satisfy the debts as acknowledged in the amount of €500,000, or $650,000, due to Von Horn's breach of contract. *Id*. ¶ 32.

In light of Von Horn's default, Rob's allegations—accepted as true per *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158, and its progeny—are sufficient to establish that Von Horn is liable for breach of contract for the purposes of entry of default judgment. *See Ajna Living, LLC v. Digital Accessories TCM Ltd.*, No. 22-CV-3127 (PKC), 2023 WL 3255466, at *3 (S.D.N.Y. May 4, 2023) (finding defendants liable for breach of contract for entry of default judgment under similar circumstances); *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM), 2022 WL 704127, at *5 (E.D.N.Y. Mar. 9, 2022) (finding defendant liable for breach of contract for entry of default judgment under similar circumstances); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB) (RML), 2022 WL 18558800, at *2 (E.D.N.Y. Dec. 19, 2022) (finding

allegations in complaint sufficient to establish liability for breach of contract on default judgment motion), *report and recommendation adopted*, 2023 WL 1766282 (E.D.N.Y. Feb. 3, 2023); *Constellation Newenergy, Inc. v. Om Vegetable, Inc.*, No. 22-CV-03766 (LJL), 2022 WL 3334707, at *3 (S.D.N.Y. Aug. 12, 2022) (imposing liability on defaulting defendants for breach of contract).

### B.     Unjust Enrichment

Rob argues, "[i]n the alternative, the [amended complaint] established Rob's claim for unjust enrichment against von Horn." Dkt. No. 96-1 at 12; *see* Dkt. No. 22 ¶¶ 33-36. At the outset, as Rob raises his claim for unjust enrichment only in the alternative, Rob does not appear to seek relief for unjust enrichment absent a finding that Von Horn breached the contract at issue. *See* Dkt. No. 98-1 ("Even if the Court were to question the enforceability of the Letter of Debt, default judgment would still be proper on Plaintiff's unjust enrichment claim."). Thus, there may be no need to address this argument in light of the undersigned's recommendation above. In an abundance of caution, however, the undersigned respectfully recommends that Rob's alternative argument for unjust enrichment be denied as duplicative of his breach of contract claim.

"[C]laims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *see also Prime Auto Collision Inc.*, 2022 WL 704127, at *5. "New York law does not permit recovery under unjust enrichment . . . where such claims are duplicative of a breach of contract claim and the court has determined that there is a valid, enforceable contract that governs the same subject matter." *Skyline Restoration, Inc.*, 2019 WL 5150207, at *4; *see also Greystone Bus. Credit II*, 631 F.3d at 54 (finding "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (internal quotation marks and citation omitted); *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501

(MKB), 2016 WL 1255726, at *3-*4 (E.D.N.Y. Mar. 28, 2016) (denying default judgment as to unjust enrichment claim upon finding that it was duplicative of breach of contract claim).

In claiming breach of contract in the amended complaint, Rob seeks damages in the sum of €500,000, which Rob asserts is the equivalent of $650,000, plus interest. Dkt. No. 22 at ¶¶ 23-32. In claiming unjust enrichment in the amended complaint, Rob effectively makes the same arguments as he made for breach of contract. *Id*. ¶¶ 33-36. Indeed, as noted above, Rob's motion for default judgment acknowledges the same by noting that unjust enrichment serves as an alternative theory of liability. Dkt. No. 96-1 at 12-13.

When a valid contract governs the dispute between parties, a plaintiff is not entitled to recover for claims duplicative of a claim for breach of that contract. *See Serrano v. Palacios*, No. 21-CV-980 (CBA) (TAM), 2022 WL 2134293, at *8 (E.D.N.Y. May 20, 2022) (dismissing breach of fiduciary duty claim that was duplicative of breach of contract claim), *report and recommendation adopted*, 2022 WL 2132951 (E.D.N.Y. June 14, 2022); *Skyline Restoration, Inc.* 2019 WL 5150207, at *4 (recommending denying default judgment for unjust enrichment claim that was duplicative of the breach of contract claim); *La Saltena S.A.U. v. Ercomar Imports Internacional Corp.*, No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *7 (E.D.N.Y. May 22, 2024) (denying plaintiff's unjust enrichment claim as an invalid cause of action under New York law, where a valid contract existed between the parties, and the claim was duplicative of the breach of contract claim).

Therefore, the undersigned respectfully recommends that Rob's motion for default judgment be denied with respect to Rob's in-the-alternative unjust enrichment claim, as such is duplicative of his breach of contract claim. *See Original Fender Mender, Inc.*, 2024 WL 3740439, at *8.

## VI.    <u>Damages for Default Judgment</u>[7]

### A.    Legal Standard

"Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty." *Paypolitan OU v. Marchesoni*, No. 21-CV-5397 (RA) (RWL), 2022 WL 17541091, at \*4 (S.D.N.Y. Aug. 26, 2022), *report and recommendation adopted*, No. 21-CV-5397 (RA), 2022 WL 17541749 (S.D.N.Y. Dec. 6, 2022) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division Of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).    "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.    "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at \*3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).

Under Federal Rule of Civil Procedure 54(c), "'[a] default judgment must not differ in kind from, or exceed the amount, what is demanded in the pleadings.'" *Mickalis Pawn Shop, LLC*, 645 F.3d at 128 n.16 (quoting Fed. R. Civ. P. 54(c)); *see also Trustees of Metal Polishers Loc. 8aA-28A Funds v. Nu Look Inc.*, No. 18-CV-3816 (PKC) (RLM), 2020 WL 6370146, at \*3 (E.D.N.Y. Feb. 14, 2020) ("[Rule 54(c)] limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer" (citations omitted)), *report and recommendation adopted*, 2020 WL

---

[7] Rob did not submit a request for attorneys' fees in either his motion or his proposed judgment (*see* Dkt. Nos. 96-1, 96-7), despite requesting "legal fees" in the amended complaint.  Dkt. No. 22 ¶ 36.  Rob's updated declaration confirmed that he is not seeking attorneys' fees.  Dkt. No. 98 at 1 ("Plaintiff does not seek attorneys' fees or costs").  Any such claim for attorneys' fees is therefore deemed abandoned.

5793204 (E.D.N.Y. Sept. 29, 2020).  Unless the number of damages is certain, a court entering default judgment is required to make an independent determination of the sum it awards.  Fed. R Civ. P. 55.

Once liability is established, "the court must ascertain damages with 'reasonable certainty.'" *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2019 WL 4439347, at *2 (E.D.N.Y. Sept. 17, 2019) (citation omitted). "An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded." *Id.* (citation omitted); *Wilmington Sav. Fund Soc'y, FSB ex rel. Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment"). "The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested." *CIT Bank N.A.*, 2019 WL 4439347, at *2 (cleaned up).

## B.    Claimed Damages

### i.    Foreign Currency

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 185 (2d Cir. 2007).  A plaintiff may submit documentary evidence or detailed affidavits to support its damages claim. *Chen*, 2023 WL 2583856, at *14.  "[I]n a diversity action, the date on which to convert a foreign currency judgment into United States dollars is governed by the law of the forum state." *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 78 F. Supp. 3d 556, 557 (E.D.N.Y. 2015) (quoting *Cagan v. Gadman*, No. 08-CV-3710 (SJF) (ARL), 2012 WL 5422270, at *6 (E.D.N.Y. Oct. 31, 2012)).

As a federal court sitting in diversity, "[the Court] must apply the currency conversion rule employed by the courts of New York. New York courts have adopted the 'judgment day' rule, which mandates conversion based on the exchange rates as of the date of judgment." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408-09 (S.D.N.Y. 2003) (citing *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 865 (2d Cir.1981)) (applying New York Judiciary Law § 27 to breach of contract case with disputed amount in Swiss Francs); *see Rienzi & Sons, Inc. v. Puglisi*, 638 F. App'x 87, 92 (2d Cir. 2016) (applying New York Judiciary Law § 27 to diversity action where disputed amount is in euros); *see also Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc.*, 923 F. Supp. 8, 12 (E.D.N.Y. 1996) (holding "[s]ection 27(b) now explicitly provides that a judgment entered in a foreign currency be converted into United States dollars at the exchange rate prevailing on the date of judgment.").

Per New York Judiciary Law § 27, Computation of Judgments and Accounts,

> In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation. Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the *date of entry of the judgment or decree*.

N.Y. Judiciary Law § 27(b) (emphasis added); *see also Commissions Imp. Exp. S.A. v. Republic of the Congo*, No. 14-MC-187 (AJN), 2020 WL 4040753, at *2 (S.D.N.Y. July 17, 2020) (distinguishing N.Y. Judiciary Law § 27 from other local laws such as Code of the District of Columbia § 15-906); *cf. Nature's Plus Nordic A/S*, 78 F. Supp. 3d at 557-58 (finding Judiciary Law § 27(b) inapplicable because the contract at issue required performance of a service and not payment of a specified amount of foreign currency); *Liberty Media Corp. v. Vivendi Universal, S.A.*, No. 03-CV-2175 (SAS), 2013 WL 105776, at *2 (S.D.N.Y. Jan. 9, 2013) (finding that application of N.Y. Judicial Law § 27 was not appropriate as the Court was exercising supplemental and not diversity jurisdiction).

23

Further, New York state law has acknowledged that contracts expressed in foreign currency carry the risk of exchange rate fluctuations and either side may profit (or suffer) from such fluctuations. *In re James' Will*, 248 N.Y. 1, 6 (1928).

### ii.    Analysis

As Von Horn's liability has been established with respect to Rob's breach of contract claim, the Court turns to evaluate damages resulting from that breach. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet*,, 2020 WL 4738242, at *3 (cleaned up). "Under New York law, it is well-settled that '[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *BASF Corp. v. Gabriel's Collision Norman Ave., Inc.*, No. 21-CV-1908 (ENV) (RER), 2022 WL 1407244, at *3 (E.D.N.Y. Jan. 12, 2022) (internal citations omitted).

Presently, "Rob seeks judgment for €500,000, which currently is less than $650,000.00." Dkt. No. 96-1 at 13; Dkt. No. 22 ¶ 32; *see also* Dkt. No. 96-7 (proposing an entry of judgment "in the principal amount of €500,000"). In support of his request, Rob includes copies the Letter of Debt and Letter of Acknowledgement that Von Horn signed on January 5, 2012, and October 6, 2015, respectively. Dkt. Nos. 96-3, 96-4, 96-5. The Letter of Debt acknowledges an outstanding debt in the amount of €500,000, so a judgment in that amount, converted as discussed *infra* would place Rob in the position he would have been in if Von Horn fulfilled the Letter of Debt. Dkt. No. 96-3; *see Gabriel's Collision Norman Ave., Inc.*, 2022 WL 1407244, at *3 (finding that plaintiff is entitled to the benefits they would have received had the contract terms been fulfilled).

24

As referenced above, courts in this Circuit "rarely enter judgments in a foreign currency," although there is no longer any reason why courts cannot enter judgment in a foreign currency. *Yukos Cap. S.A.R..L.*, 592 F. App'x at 12 (citing *Competex, S.A. v. Labow*, 783 F.2d 333, 337 (2d Cir. 1986)); *see also Restatement (Third) of Foreign Relations Law* § 823 (1987) ("The traditional United States rule has been that courts in the United States are required to render money judgments payable in United States dollars only, regardless of the currency of obligation or loss."). Rob has not established why euros, rather than U.S. dollars, should be the currency awarded here.

In any event, because this contract dispute concerned a loan agreement and an outstanding debt denominated in euros, it falls squarely within New York Judiciary Law § 27(b), and calculation of exchange rate on the day of entry of judgment is appropriate. N.Y. Judiciary Law § 27(b); *see Dye v. Kopiec*, No. 16-CV-2952 (LGS) (KNF), 2019 WL 2527218, at *7 (S.D.N.Y. May 10, 2019), *report and recommendation adopted*, No. 16-CV-2952 (LGS), 2019 WL 2525410 (S.D.N.Y. June 19, 2019) (finding that, "that part of the amount of damages established with reasonable certainty that is in euros, namely, €1,020,000, will be converted to United States dollars at the rate of exchange prevailing on the date of the final judgment in this action"); *see also Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2023 WL 2746022, at *18 (S.D.N.Y. Mar. 31, 2023), *upheld, in part, on reconsideration*, No. 15-CV-2739 (LAP), 2023 WL 3625784 (S.D.N.Y. May 24, 2023) (rejecting day of judgment conversion from pesos to dollars when the obligation was not specified in pesos originally).

Here, Rob clearly asserts a violation of a loan agreement for a fixed amount of foreign currency, not a contract for goods and services. Dkt. No. 22 ¶ 26. Similarly, *Dye* concerned a plaintiff asserting a breach of a promissory note for a given amount of euros. *Dye*, 2019 WL 2527218, at *1. This case is analogous to *Dye*, where the district court awarded damages based

on a verified amount of euros and then converted that amount to dollars on the day judgment was entered. *See Dye*, 2019 WL 2527218, at *7; *Glob. Exp. Mktg. Co. v. Abdelrahman A. Abbar Trading Co.*, No. 20-CV-3504 (JPC) (SN), 2023 WL 425042, at *4 (S.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 2632230 (S.D.N.Y. Mar. 24, 2023) (finding defendant in default and recommending judgment be entered in dollars equivalent to the amount of Saudi Arabian Riyals specified in the Balance Agreement); *Cagan v. Gadman*, No. 08-CV-3710 (SJF) (ARL), 2012 WL 5422270, at *6 (E.D.N.Y. Oct. 31, 2012) (converting U.K. judgment from GBP to U.S. dollars at exchange rate prevailing on the day of American court order).

Accordingly, for the reasons described above, Rob is entitled to judgment in his favor and against Von Horn in the principal amount of €500,000—to be converted to American dollars on the date final judgment is entered. *See* Dkt. Nos. 96-3, 96-7.[8]

## C.    Pre-Judgment Interest

Rob also requests pre-judgment interest on the award of monetary damages for the breach of contract claim. *See* Dkt. No. 22 ¶ 32; Dkt. No. 96-1 at 14; Dkt. No. 96-2. "Under New York law, if a plaintiff prevails on a claim for breach of contract, that plaintiff is also entitled to pre-judgment interest." *Gabriel's Collision Norman Ave., Inc*., 2022 WL 1407244, at *3 (awarding pre-judgment interest where the plaintiff prevailed on its breach of contract claim). The statutory rate for pre-judgment interest is nine percent per annum under New York Law. *See* N.Y. C.P.L.R. § 5004; *see also Arch Specialty Ins. Co. v. B & V Constr. Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *7 (E.D.N.Y. Apr. 23, 2024). The Court should calculate pre-judgment interest "from the earliest ascertainable date the cause of action existed . . . to the date the verdict

---

[8] The undersigned notes that the judgment envisioned by Fed. R. Civ. P. 55(b) is the final judgment in the case, not the present Report and Recommendation, and thus does not make the currency conversion at this stage. *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 335 (2d Cir. 1986).

was rendered or the report or decision was made." N.Y. C.P.L.R. §§ 5001(b)–(c), 5004. Nevertheless, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Eco-Fuels LLC v. Sarker*, No. 22-CV-250 (KAM) (JAM), 2024 WL 779038, at *9 (E.D.N.Y. Feb. 26, 2024) (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, and because Rob seeks monetary damages rather than equitable relief, pre-judgment interest is appropriate at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004. Rob initially requested an award of pre-judgment interest from March 1, 2015, which he alleged was the date that Von Horn sold Pilot House and failed to pay him the proceeds. *See* Dkt. No. 96-1 at 13-14. But by Rob's own submissions, Von Horn maintained Pilot House, with Rob's assistance to pay property taxes, until March 29, 2019. *See* Dkt. No. 22 ¶¶ 18-22. Rob's supplemental damages submission corrected this discrepancy and requested pre-judgment interest starting on March 29, 2019. Dkt. No. 98-1 at 10-11 ("Von Horn breached her repayment obligation no later than March 29, 2019 when she sold the Pilot House property and failed to apply the proceeds to her debt").

Based on this record, the appropriate day to start calculating pre-judgment interest is March 29, 2019, which is when, as Rob acknowledges, Von Horn sold Pilot House and failed to repay Rob in accordance with the Letter of Acknowledgement. *See id.* at 6-7; 96-4; *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 426 (S.D.N.Y. 2014) (finding prejudgment interest appropriate from the date of breach to the date judgment is entered); *McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1200 (2d Cir. 1995) (finding "[t]he 'earliest possible date' in contract actions arises when the alleged breach occurred, regardless of the parties' states of mind or subsequent discussions.").

27

Accordingly, the undersigned respectfully recommends that pre-judgment interest be awarded from March 29, 2019 through the date of entry of final judgment for Rob's claim for breach of contract.

### D.    Post-Judgment Interest

Rob is entitled to post-judgment interest under 28 U.S.C. § 1961(a). The Second Circuit has consistently held that post-judgment interest, as governed by federal statute, is mandatory. *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008); *see Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered"), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).

Therefore, the undersigned respectfully recommends that Rob be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015).

## VII.    Counterclaims

In Von Horn's answer, she asserts five counterclaims, to wit: (1) Rob fraudulently induced Von Horn by his intentional misrepresentations, to which Von Horn relied to her detriment; (2)

28

Rob committed active fraud in the performance of his duties to Von Horn under the Short Form Power of Attorney ("POA") by his intentional misrepresentations; (3) Rob breached his fiduciary duties accepted and bargained for under the POA; (4) Rob converted the "monies and property of Von Horn without legal justification or privilege"; and (5) Rob's fraud, fraudulent inducement, breach of fiduciary duty, and conversion all give rise to compensable damages in favor of Von Horn.  Dkt. No. 26 at 8-9.  Rob's motion for Default Judgment includes a request for dismissal of Von Horn's counterclaims under Federal Rule of Civil Procedure 41(b) for failure to prosecute. Dkt. No. 96-1 at 14-18.  As discussed below, the undersigned respectfully recommends that the Court dismiss Von Horn's counterclaims.

### A.    Legal Standard

Rule 41(b) of the Federal Rules of Civil Procedure provides that a case may be involuntarily dismissed if a plaintiff "fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b); *see also Schwartz v. AMF Bowling Centers, Inc.*, No. 19-CV-7096 (WFK) (JAM), 2025 WL 1682269, at *3-*4 (E.D.N.Y. June 16, 2025) *report and recommendation adopted*, 2025 WL 1826568 (E.D.N.Y. Jul. 2, 2025) (directing defendant to file Fed. R. Civ. P. 41(b) motion to dismiss for failure to prosecute); *Nielsen v. J.C. Penny Co., Inc.*, No. 23-CV-5619 (JGLC) (HJR), 2025 WL 868495, at *2 (S.D.N.Y. Mar. 20, 2025), *report and recommendation adopted*, No. 23-CV-5619 (JGLC), 2025 WL 1265807 (S.D.N.Y. Apr. 30, 2025) (applying court's inherent authority to dismiss case for failure to prosecute).  Although dismissal under Rule 41(b) is subject to the discretion of the district courts, the Second Circuit has stated that a Rule 41(b) dismissal is a "harsh remedy to be utilized only in extreme situations."  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citation omitted).

29

Before exercising its discretionary authority to dismiss for failure to prosecute, a district court should consider the following five factors:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).  No single factor is dispositive, and they apply "regardless of whether plaintiff is represented by counsel or proceeding *pro se*." *Doe v. City of New York*, 2004 WL 2397191, at *2 (S.D.N.Y. Oct. 25, 2004); *see Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994). For a *pro se* litigant, dismissal is reserved for "circumstances [that] are sufficiently extreme." *Jacobs v. Cnty. of Westchester*, No. 99-CV-4976 (WCC), 2008 WL 199469, at *3 (S.D.N.Y. Jan. 22, 2008) (quoting *Coss v. Sullivan County Jail Adm'r*, 171 F.R.D. 68, 70 (S.D.N.Y.1997); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (cautioning that, "deference is due to the district court's decision to dismiss a *pro se* litigant's complaint only when the circumstances are sufficiently extreme.").  "While the Second Circuit has cautioned that *pro se* plaintiffs should be granted special leniency regarding procedural matters, courts in this district have recognized that [] even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning." *Zeigler v. Annucci*, No. 23-CV-707 (KMK), 2025 WL 1056904, at *2 (S.D.N.Y. Apr. 8, 2025) (cleaned up and internal citations omitted).

"Rule 41 applies with equal force 'to a dismissal of any counterclaim, crossclaim, or third-party claim.'" *Rsch. Found. for State Univ. of New York v. Telluric Labs, LLC*, No. 21-CV-1898 (JS) (SIL), 2023 WL 6307995, at *6 (E.D.N.Y. Sept. 28, 2023) (quoting Fed. R. Civ. P. 41(c)); *see Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL

5399245, at *10 (E.D.N.Y. Aug. 30, 2024) (applying Rule 41(c) to analyze dismissal of counterclaims under Rule 41(b) framework).

### B.    Discussion

Here, the five *Baptiste* factors require dismissal of all counterclaims due to Von Horn's failure to prosecute this action.  *See Baptiste*, 768 F.3d at 216; *Mendoza v. 901 Columbus Deli Corp.*, No. 24-CV-9586 (KPF), 2025 WL 2390728, at *2 (S.D.N.Y. Aug. 18, 2025) (concluding that "these factors weigh in favor of dismissal of this action" where a plaintiff "has consistently failed to prosecute this case over a period of months.").

With respect to the first *Baptiste* factor, the duration of the plaintiff's failure to prosecute has been egregious.  *See id.*  Von Horn has engaged in over 10 months of dilatory conduct since she first failed to appear on December 13, 2024, and she has been unavailable to the Court since that missed court appearance.  December 13, 2024 Text Order.  It is well established in this Circuit that a delay of several months can warrant dismissal.  *See Yadav v. Brookhaven Nat'l Lab.*, 487 Fed. Appx 671, 673 (2d Cir. 2012) ("[Plaintiff's] dilatory conduct extended for only three months, we have noted that a delay of a matter of months can potentially warrant dismissal.") (internal quotations and citation omitted); *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (finding that dismissal is appropriate in seven months if defendant is completely inaccessible, as this conduct strongly suggests plaintiff is not diligently pursuing their claim); *Dong v. United States*, No. 02-CV-7751 (SAS), 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004) (finding that, "the very fact that Dong has been inaccessible for the last two months—without notifying the Court, the Government, or the *Pro Se* Office of a change of address—strongly suggests that he is not diligently pursuing this claim"); *Hibbert v. Apfel*, No. 99-CV-4246 (SAS), 2000 WL 977683,

at *2 (S.D.N.Y. July 17, 2000) (holding that six months of inaction by plaintiff justifies dismissal of an action).

With respect to the second *Baptiste* factor, the Court has adequately put Von Horn on notice that failure to comply with Court orders could result in dismissal. *See Hunter v. New York State Dep't of Corr. Servs.*, 515 F. App'x 40, 43 (2d Cir. 2013) (holding that two notices that an action could be dismissed was sufficient notice). When Von Horn first failed to appear as directed at the December 13, 2024 conference, the Court provided an unambiguous warning that, "[f]ailure to comply with this order may result in sanctions, including . . . the Court issuing a *sua sponte* report and recommendation [] that Von Horn's case be dismissed for failure to comply with court orders under Fed. R. Civ. P. 41(b)." December 13, 2024 Text Order (italics added). As noted above, this Order was served on Von Horn and her nieces via email by Verner, who said such email addresses were the "same means of communication [Verner and the recipients had] used since [Verner] first appeared in these consolidated actions." Dkt. No. 88.

Similarly, when Von Horn failed to respond, on December 26, 2024, the Court further ordered her to show cause, again cautioning that her "failure to comply with this and other of the Court's orders may result in sanctions, including" dismissal of the *Von Horn* Action and a default judgment in the *Rob* Action. December 26, 2024 Text Order. Verner again served this Order on Von Horn and her nieces via email. Dkt. No. 89.

When Von Horn's failure to respond persisted through January 9, 2025, the Court *sua sponte* extended her deadline to do so until January 31, 2025, again cautioning Von Horn "that failure to comply with Court orders may result in sanctions, which include *sua sponte* dismissal or default judgment." January 9, 2025 Text Order (italics added). The Court also directed the Clerk of Court to serve its January 9, 2025 Order on Von Horn and her nieces via email. *Id.*

32

By February 11, 2025, Von Horn still had yet to show cause or otherwise respond to the Court's numerous Orders. February 11, 2025 Text Order. The Court then directed Connors to file a motion to dismiss for Von Horn's failure to prosecute the *Von Horn* Action, and Rob was directed to seek a Certificate of Default from the Clerk of Court for Von Horn in the *Rob* Action. *See id.* The Clerk of Court served the Court's Order on Von Horn and her nieces via email.[9] *Id.* Further, to date, Von Horn has failed to respond to the undersigned's September 20, 2025 Report and Recommendation recommending dismissal for her failure to prosecute in the *Von Horn* Action. *See Von Horn* Action, Dkt. No. 70.

These orders provided explicit notice to Von Horn that her failure to prosecute and comply with Court orders would result in dismissal of her case. *See Hunter*, 515 F. App'x at 43; *Velt Corp. v. United States*, No. 19-CV-5463 (MKB) (ST), 2020 WL 8413513, at *3 (E.D.N.Y. Dec. 7, 2020), *report and recommendation adopted*, No. 19-CV-5463 (MKB) (ST), 2020 WL 7639962 (E.D.N.Y. Dec. 23, 2020) (finding that failure to comply with three orders to file a status report warranted dismissal); *but see Lewis v. Frayne*, 595 F. App'x 35, 37 (2d Cir. 2014) (finding that a warning embedded in an order to show cause was overly technical and cannot be sufficient notice on its own). Additionally, the warnings provided to Von Horn were sufficiently forward-looking as they warned her that the action would be dismissed in the event of further delay. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 255 (2d Cir. 2004) (finding that a warning that an action will be dismissed based on past delay provides insufficient notice to defendant to satisfy the second factor of the Rule 41(b) dismissal test).

---

[9] As noted above, on March 18, 2025, over a month after the Clerk of Court served the Court's February 12, 2025 Order on Von Horn and her nieces via email, Von Horn replied to such email, but did not file anything on the docket or otherwise resume prosecuting her case.

33

With respect to the third *Baptiste* factor, Von Horn's failure to appear allows the Court to presume as a matter of law that defendant will be prejudiced by further delay. *Tankersley v. City of New York*, No. 19-CV-3359 (MKB), 2021 WL 5013620, at *3 (E.D.N.Y. Oct. 26, 2021). The principal allegations in this case concern a series of alleged loans that are decades old, and fading memories of the events in question could prejudice Rob's ability to mount a defense against these counterclaims. *See Rubin v. Abbott Lab'ys*, 319 F.R.D. 118, 121 (S.D.N.Y. 2016) (finding that the longer the litigation process takes, the less likely it is that critical witnesses will be available) (citing *Yang v. Greyhound Lines, Inc.*, No. 07-CV-6499, 2008 WL 3126188, at *2 (S.D.N.Y. July 14, 2008)). "Prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable. In cases where 'delay is more moderate or excusable, the need to show actual prejudice is proportionally greater.'" *Norden Sys., Inc.*, 375 F.3d at 256 (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)). *Lyell* is instructive, as it upheld a presumption of prejudice against a defendant when plaintiff repeatedly failed to provide documents that the Court ordered, even after repeated warnings that dismissal could result. 682 F.2d at 39-40, 43. The present case is similar, where, as in *Lyell*, Von Horn has been repeatedly warned that failure to show cause or otherwise respond to Court orders could result in dismissal. *See* December 13, 2024, December 26, 2024, and January 9, 2025 Text Orders. Accordingly, Von Horn's failure to heed the Court's orders and drive her counterclaims forward permits the Court to presume prejudice to Rob.

With respect to the fourth *Baptiste* factor, the Court must weigh the administrative burden placed on the Court's docket by stagnant cases, such as Von Horn's, with Von Horn's right to due process and fair chance to be heard. *See Rubin*, 319 F.R.D. at 121; *Baptiste*, 768 F.3d at 216. In making this determination, courts "look at whether a litigant has been given an opportunity 'to be

heard on the issue of failure to prosecute'" and compare that to, "plaintiff's 'interest in prosecuting [its] case.'" *Velt Corp.*, 2020 WL 8413513, at *3 (quoting *Martens v. Thomann*, 273 F.3d 159, 182 (2d Cir. 2001); *Caussade*, 293 F.R.D. at 631). When considering docket congestion, the Second Circuit has stated that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Id.* (quoting *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996)).

Here, despite having repeatedly been notified of this Court's orders, Von Horn has ignored them, thus demonstrating a clear lack of interest in pursuing her counterclaims. *See Caussade*, 293 F.R.D. at 631 (holding that failure to respond to repeated requests from the Court weighs in favor of granting a Rule 41(b) motion to dismiss for failure to prosecute); *Velt Corp.*, 2020 WL 8413513, at *3. Moreover, Von Horn has had ample opportunity to be heard, as evidenced by the Court's repeated grants of *sua sponte* extensions of her time to respond and directions to the Clerk of Court that Von Horn and her nieces be served with the Court's Orders. *See* December 26, 2024, January 9, 2025, and February 11, 2025 Text Orders. Accordingly, in the face of Von Horn's waning interest in prosecuting her counterclaim, the balance tips in favor of alleviating the administrative burden and congestion that stagnant cases, such as this one, place on the Court's docket.

The final *Baptiste* factor compels the court to consider whether lesser sanctions are available to remedy prejudice resulting from Von Horn's delay. *See Baptiste*, 768 F.3d at 216. Courts in this Circuit have repeatedly held that when plaintiffs fail to respond to the Court or their own lawyer, no sanction short of dismissal is likely to rectify the issues created by the plaintiffs' absences. *See Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857 (AMD) (LKE), 2024 WL 4593424, at *3 (E.D.N.Y. Oct. 28, 2024) (explaining that a "lesser sanction is unlikely to remedy

35

the prejudice resulting from [the plaintiff's] delay and failure to comply with court orders"); *Copiel v. Pugliese*, No. 19-CV-4231 (MKB) (LB), 2021 WL 2792182, at *3 (E.D.N.Y. Apr. 29, 2021), *report and recommendation adopted as modified*, No. 19-CV-4231 (MKB) (LB), 2021 WL 2659985 (E.D.N.Y. June 29, 2021) (noting that "when a plaintiff fails to respond to a Court order once threatened with dismissal, it is unlikely that a lesser sanction will result in reengagement in a matter").  Courts have also raised the practical concern that no lesser sanction would be effective because the non-responsive plaintiff would be unaware that such a sanction had been applied.  *See Blake v. Payane*, No. 08-CV-0930 (PAC) (PED), 2011 WL 7163172, at *2 (S.D.N.Y. Mar. 11, 2011).

Von Horn's lack of interest in this case, as evidenced by over 10 months of unresponsiveness, shows that a lesser sanction, such as a fine, would likely have no effect.  *See Rogers v. Villafane*, No. 12-CV-3042 (CBA) (MDG), 2013 WL 3863914, at *3 (E.D.N.Y. July 24, 2013) ("There is no indication that a lesser sanction, such as a fine, would be effective, given the plaintiff's failure to take any action for several months to indicate an interest in pursuing this case.").

Accordingly, the undersigned respectfully recommends that the Von Horn's counterclaims, as outlined in Dkt. No. 23, be dismissed under Rule 41(b) for failure to prosecute.

## VIII.  <u>Conclusion</u>

In sum, the undersigned finds that Rob sufficiently alleges Von Horn's liability for breach of contract under New York law and respectfully recommends that default judgment be entered in favor of Rob against Von Horn, in the principal amount of €500,000—to be converted to American dollars on the date of final judgment, plus pre-judgment interest.  The undersigned respectfully recommends that Von Horn's counterclaims be dismissed pursuant to Federal Rule of Civil

Procedure 41(b).  A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Rob's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Von Horn and to file proof of service on ECF by October 16, 2025.

Copies shall be served at the following mail and email addresses:

Lola Hilton Von Horn
Grev Magningatan 16
S-114 55 Stockholm, Sweden

lolahvonhorn@gmail.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Donnelly.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            October 14, 2025                          **SO ORDERED.**

                                                       */s/ Joseph A. Marutollo*
                                                      JOSEPH A. MARUTOLLO
                                                      United States Magistrate Judge